**UNITED STATES of America,**
**Plaintiff,**

v.

**STONE CONTAINER CORPORATION,**
**Defendant–Appellee,**

v.

**Montana Coalition for Health, Environmental and Economic Rights, Inc., Cold Mountain, Cold Rivers, Inc. and Native Forest Network, Inc., Plaintiffs–Intervenors–Appellants.**

**No. 98–36175.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1999.

Decided Nov. 19, 1999.

Charles M. Tebbutt, Western Environmental Law Center, Eugene, Oregon, for the plaintiffs-intervenors-appellants.

Russell S. Frye, Collier, Shannon, Rill & Scott, Washington, D.C., for the defendant-appellee.

Before: White, Associate Justice, Retired,[1] and Thomas and McKeown, Circuit Judges.

McKEOWN, Circuit Judge:

This case requires us to decide whether an intervenor-plaintiff in a suit brought by the Environmental Protection Agency ("EPA") under § 113(b) of the Clean Air Act (the "CAA" or the "Act"), 42 U.S.C. § 7413(b), is entitled to litigation costs pursuant to § 304(d) of the Act, 42 U.S.C. § 7604(d).

Montana Coalition for Health, Environmental and Economic Rights ("CHEER")[2] intervened in a § 113(b) action brought by the EPA against Stone Container Corporation ("Stone"). The suit resulted in a consent decree. CHEER appeals the district court's denial of its motion for attorneys' fees. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. We hold that an intervenor-plaintiff in a § 113(b) case is not entitled to recover attorneys' fees under § 304 of the Act. Section 304(d) provides that the court may award litigation costs, "including attorney and expert witness fees" in an "action brought pursuant to [§ 304(a)]," the citizen suit provision. The Act makes no provision for fees for an intervenor-plaintiff in a suit brought by the government under § 113(b).

## BACKGROUND

CHEER's request for attorneys' fees arises out of a § 113 action commenced on January 22, 1996, by the United States Department of Justice on behalf of the EPA against Stone (referred to as the "United States action"), which alleged three separate violations of the Act. Two months earlier, on November 22, 1995, in accord with statutory requirements, CHEER provided Stone and the United States with 60-day notice of its intent to file suit against Stone for violations of the CAA, the Clean Water Act, and the Emergency Planning and Community Right to Know Act. In response to the notice, the United States filed its complaint on the final day of the 60-day notice period. One week later, on January 29, 1996, CHEER filed a citizen suit against Stone alleging various violations of the federal environmental laws, including 21 CAA violations. Among the CAA claims in CHEER's complaint were three that mirrored the three counts of the United States complaint.

Over the next two years, CHEER and the United States cooperated to settle the claims and ultimately negotiated separate consent decrees with Stone.[3] The CHEER–Stone consent decree settled all of CHEER's claims that did not overlap with the claims brought in the United States action. As part of the consent decree, CHEER agreed to dismiss its three duplicative CAA claims, subject to intervention in the United States enforcement action:

> Plaintiffs [CHEER] agree to dismiss any claims asserted in their Complaint covering conduct which is the subject of claims asserted by the United States in *United States v. Stone Container*, CV–96–003–BLG, upon their intervention in that case.

In recognition of CHEER's entitlement to attorneys' fees for the nonduplicative

---

**1.** The Honorable Byron R. White, Associate Justice of the United States Supreme Court (Ret.), sitting by designation pursuant to 28 U.S.C. § 294(a).

**2.** CHEER is joined in its appeal by Cold Mountain, Cold Rivers, Inc. and Native Forest Network, Inc., both of which were parties to the district court action.

**3.** In affidavits supporting CHEER's motion for fees, the United States recognized the beneficial contribution that CHEER made to the settlement of the government's action.

claims brought under various environmental statutes, Stone agreed to pay CHEER $129,373 in attorneys' fees and costs.

Following execution of the CHEER–Stone consent decree, CHEER filed an unopposed motion to intervene in the United States action. With CHEER joined as an intervenor-plaintiff, the United States action was similarly resolved by a consent decree. The consent decree outlined the procedural history of the two actions and noted that, with respect to the United States action

> [CHEER] has been involved as if it were an intervenor in the actions related to the resolution of this case with the United States. For purposes of settlement, CHEER is dismissing the overlapping claims from the action initiated on January 26, 1996 and filing a motion to intervene in this case. The United States and Stone do not oppose such intervention.

The consent decree also provided that Stone disputed CHEER's right to legal fees for participation in the United States action and left that issue for resolution by a later fee petition. The district court entered both consent decrees on May 19, 1998, and CHEER subsequently filed its motion for attorneys' fees in the United States action.

The district court denied CHEER's motion, reasoning that CHEER's duplicative claims were precluded by § 304(b)(1)(B), which expressly precludes commencement of suits under § 304(a) when the United States has already commenced and is diligently prosecuting an action asserting the same claims. Thus, CHEER's claims were not claims "brought pursuant to" § 304(a) and CHEER was not entitled to attorneys' fees. CHEER appeals this decision.

## STANDARD OF REVIEW

We review de novo CHEER's request for fees. *See Coalition for Clean Air v. Southern Cal. Edison Co.,* 971 F.2d 219, 229 (9th Cir.1992) ("We review the award or denial of attorney's fees for abuse of discretion, but any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable de novo.").

## DISCUSSION

 The question before us is resolved by the express statutory language of the Clean Air Act. As a general proposition, prevailing parties are not entitled to an award of attorneys' fees, absent an enforceable contract or statutory authority. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Acknowledging this limitation, CHEER argues that fees are recoverable under § 304(d) of the CAA, which provides:

> The court, in issuing any final order in any action *brought pursuant to subsection (a) of this section,* may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

42 U.S.C. § 7604(d) (emphasis added).

Section 304(a) authorizes commencement of citizen suits, subject to the limitation in § 304(b) that no such action may be commenced where the government "has commenced and is diligently prosecuting a civil action...." 42 U.S.C. § 7604(b)(1)(B). A plain reading of these provisions does not support CHEER's interpretation that fees are available to an intervenor in a § 113 action. Indeed, the statutory language compels the conclusion that a court may award litigation costs (including attorneys' fees) only if the underlying action was brought pursuant to subsection (a), that is, § 304(a) of the Act. *See United States v. National Steel Corp.,* 782 F.2d 62, 64 (6th Cir.1986) (holding that "[t]he statute makes clear that the courts have authority to award attorney fees only if the action was 'brought pursuant to subsection (a)'" and denying claim for attor-

neys' fees by citizen group in suit brought under § 113).

CHEER sought statutory fees in the United States action in which CHEER had standing as a plaintiff-intervenor joined as a matter of right under § 304(b)(1)(B). This action was brought pursuant to § 113, not pursuant to § 304(a). No statute provides for attorneys' fees in a § 113 action. We now hold that under these circumstances, a plaintiff-intervenor in a § 113 action is not entitled to attorneys' fees under § 304(d).

CHEER points to *United States (EPA) v. Environmental Waste Control, Inc.,* 710 F.Supp. 1172 (N.D.Ind.1989) *("EWC I")*, *aff'd*, 917 F.2d 327 (7th Cir.1990), as support for an award of fees to an intervening party in an action arising under the federal environmental protection laws.[4] In *EWC I*, a citizen group, STOP, intervened pursuant to 42 U.S.C. § 9613(i) in a Resource Conservation and Recovery Act ("RCRA") suit brought by the EPA. *Id.* at 1180, 1188. As part of its amended complaint, STOP presented additional claims and sought relief beyond that sought by the EPA. *See id.* at 1181. STOP also maintained that it was entitled to attorneys' fees under RCRA's citizen suit provision.[5] The district court recognized that § 9613(i)-the provision by which STOP intervened in the EPA action-did not authorize fee awards but nevertheless held that "for attorney fee purposes, an intervention under 42 U.S.C. § 9613(i) may be deemed a suit brought pursuant to the citizen suit section [of RCRA]." *Id.* at 1248. The court rested

its holding in part on its conclusion that "Congress intended for citizen groups intervening as a matter of right to be able to recover their costs and attorney fees." *Id.*

*EWC I* is neither persuasive nor controlling. To the extent the court based the intervenor fee award on the fact that STOP brought additional claims that were "viewed more properly as having been in the nature of a citizen's suit," *id.* at 1188-89, the case is easily distinguished.[6] Here, CHEER already recovered attorneys' fees for the successful prosecution of its separate claims that did not duplicate those already brought by the United States. To the extent the court ignored the language of the statute and veered off into an analysis of congressional intent, we disagree. The plain language of the CAA, including the absence of a fee provision for intervenors, controls our decision and trumps the congressional intent analysis in *EWC I*.

■ Recognizing the uphill battle based on intervenor status, CHEER also claimed fees under § 304 on the ground that its citizen suit containing the three duplicative claims was commenced under § 304(a). This argument fails on procedural grounds. The appeal before us arises from the fee motion in the § 113 suit, not in CHEER's § 304(a) suit.[7] The statute is clear that fees may be awarded only "in issuing any final order *in any action brought pursuant to subsection (a) [304(a)] of this section.* ..." 42 U.S.C. § 7604(d) (emphasis added). No fee motion in an action brought pursuant to

---

**4.** CHEER actually cites a related case, *United States (EPA) v. Environmental Waste Control, Inc.,* 737 F.Supp. 1485, 1491 (N.D.Ind.1990) *("EWC II")*, in which the court discusses its earlier decision regarding the award of attorneys' fees.

**5.** *See* 42 U.S.C. § 6972. This provision is similar to the CAA's citizen suit provision. STOP also maintained that it was entitled to fees under the similarly worded Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") citizen suit provision, 42 U.S.C. § 9659.

**6.** *See also United States v. Maine Dep't of Transp.,* 980 F.Supp. 546, 551-52 (D.Me. 1997) (holding that an intervenor-plaintiff in a Clean Water Act case was not entitled to attorneys' fees and finding *EWC I* unpersuasive).

**7.** In the consent decree in the CHEER-Stone suit, CHEER agreed to dismiss "any claims asserted in [its] Complaint covering conduct which is the subject of claims asserted by the United States in *United States v. Stone Container* ...." The three CAA claims in CHEER's § 304 citizen suit were dismissed.

§ 304(a) was before the district court and no appeal of a § 304(a) action is before this court. We thus need not address CHEER's argument that it was entitled to fees for the duplicative claims that it brought and then dismissed in its separate § 304 action against Stone.

Our holding today is reinforced by the policy underlying citizen suit provisions in federal environmental legislation. As the Supreme Court has emphasized, Congress's intent was to encourage citizen suits only "if the Federal, State, and local agencies fail to exercise their enforcement responsibility." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (internal quotations omitted). Where the government does take action, as the EPA did in this case, the need to provide incentives for private party participation diminishes. *See North and South Rivers Watershed Ass'n., Inc. v. Town of Scituate*, 949 F.2d 552, 558 (1st Cir.1991) (stating that Congress and Supreme Court have recognized that citizen suits are intended to supplement rather than to supplant governmental action and that citizen suits are proper only if government agencies fail to exercise their enforcement responsibility); *see also Hallstrom v. Tillamook County*, 844 F.2d 598, 601 (9th Cir. 1987) ("Congress believed that citizen enforcement through the courts should be secondary to administrative enforcement by the EPA."), *aff'd*, 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989).

Although we realize that awarding attorneys' fees to intervenor-plaintiffs could operate as an additional incentive designed to further citizen participation, this is a decision left to Congress, not the courts. Our resolution of this case is guided by the express language of §§ 304(a), (b)(1)(B), and (d), which, read together, settles the issue and leaves little room for debate. *Cf. Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, ——, 119 S.Ct. 755, 760, 142 L.Ed.2d 881 (1999) ("As in any case of statutory construction, our analysis begins with 'the language of the statute.' And where the statutory language provides a clear answer, it ends there as well.") (citations omitted).

AFFIRMED.