**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE VOLKSWAGEN "CLEAN
DIESEL" MARKETING, SALES
PRACTICES, AND PRODUCTS
LIABILITY LITIGATION,

No. 16-17060

D.C. No.
3:15-md-02672-
CRB

JASON HILL ET AL.,
*Plaintiffs*,

and

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

VOLKSWAGEN, AG; VOLKSWAGEN
GROUP OF AMERICA, INC.; AUDI,
AG; AUDI OF AMERICA, LLC;
PORSCHE CARS NORTH AMERICA,
INC.; ROBERT BOSCH GMBH;
ROBERT BOSCH, LLC,
*Defendants-Appellees*,

v.

RONALD CLARK FLESHMAN, JR.,
Proposed Intervenor,
*Movant-Appellant.*

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, Senior District Judge, Presiding

Argued and Submitted December 7, 2017
Pasadena, California

Filed July 3, 2018

Before:  A. Wallace Tashima, William A. Fletcher,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

# SUMMARY[*]

## Intervention / Clean Air Act

The panel affirmed the district court's denial of a motion to intervene, filed by a disgruntled owner of a 2012 Volkswagen, in the federal government's Clean Air Act enforcement action against Volkswagen.

The government's suit arose from the car manufacturer's installation in some of its cars of "defeat devices" that allowed Volkswagen to cheat on emissions tests. The parties reached a final proposed consent decree, and the government filed its enforcement action with the court.

The panel held that the Clean Air Act's citizen suit provision, 42 U.S.C. § 7604, did not grant the movant an "unconditional right" to intervene under Fed. R. Civ. P. 24(a)(1). First, the panel held that § 7604(b)(1)(B)'s diligent prosecution bar circumscribed a citizen's right to intervene in an enforcement action under that same provision. The panel further held that a citizen who retained the right to file suit on his own, despite a government enforcement action, had no statutory right to intervene in that action. Second, the panel held that the government was not suing to enforce a "standard, limitation, or order" within the meaning of the Clean Air Act, and therefore the diligent prosecution bar did not preclude movant's claims and he was free to bring his own citizen suit. Accordingly, the movant had no statutory right to intervene in the government enforcement action

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

under the Clean Air Act.  Alternatively, the panel held that movant's proposed complaints-in-intervention demonstrated that he was not seeking to enforce the provisions invoked by the government, and therefore he could have filed his own suit and was not entitled to intervene in the government's action.

The panel held that movant could not intervene as of right under Fed. R. Civ. P. 24(a)(2) because he had no standing for the relief he sought.

## COUNSEL

James Ben Feinman (argued), Lynchburg, Virginia, for Movant-Appellant.

Brian C. Toth (argued), Washington, D.C., for Defendants-Appellees.

Sharon Nelles (argued), New York, New York, for Defendants-Appellees.

**OPINION**

BERZON, Circuit Judge:

Ronald Clark Fleshman, Jr., the disgruntled owner of a 2012 Volkswagen Jetta, appeals the denial of his motion to intervene in the federal government's Clean Air Act suit against Volkswagen, AG and several of its subsidiaries (collectively Volkswagen or VW). The government's suit arose from the car manufacturer's installation in some of its cars of "defeat devices"—surreptitious pieces of software that allowed VW to cheat on emissions tests. Six months after filing suit, the parties reached a final proposed consent decree, and the government filed it with the court. Our question is whether Fleshman was entitled to intervene in the government's enforcement action. We conclude that he was not.

## I

### A.  The Clean Air Act

The Clean Air Act "protect[s] and enhance[s] the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).[1] Toward that end, the Act directs the Environmental Protection Agency (EPA) Administrator to prescribe emissions standards for new automobiles. *See* § 7521(a)(1); *Massachusetts v. EPA*, 549 U.S. 497, 506 (2007). Each model year of a manufacturer's vehicles must carry a "certificate of

---

[1] All statutory citations are to the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, unless otherwise stated.

conformity" (COC) establishing those vehicles' compliance with the relevant emissions standards.   § 7522(a)(1); 40 C.F.R. § 86.1848-01.  The Act prohibits the installation in a new automobile of any device that bypasses or defeats the operation of emission control systems.  § 7522(a)(3).

As to enforcement, the Act also grants "any person" the right to bring a civil action challenging the violation of "(A) an emission standard or limitation under this chapter or (B) an order issued by the [EPA] Administrator or a State with respect to such a standard or limitation."  § 7604(a)(1). Such a suit may not be brought, however, "if the Administrator or State has commenced and is diligently prosecuting a civil action . . . to require compliance with the standard, limitation, or order."  § 7604(b)(1)(B).  But "in any such action . . . any person may intervene as a matter of right."  *Id.*

## B.  State implementation plans (SIPs)

The Clean Air Act "ma[kes] the States and the Federal Government partners in the struggle against air pollution." *Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990).  Pursuant to that cooperative scheme, the EPA sets national ambient air quality standards, and the states develop state implementation plans (SIPs), subject to the approval of the EPA, to implement those standards.  *See id.* at 532–33; *see also* § 7410(a).

The SIPs work toward attainment of national air quality standards primarily by regulating "stationary sources" like power plants and factories.  *See Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1078–79 (D.C. Cir. 1996); *Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control*

*Dist.*, 644 F.3d 934, 938 (9th Cir. 2011). Regulation of "mobile sources" is the province of the federal government. In fact, the Act prohibits the states from setting emissions standards for new automobiles; only the EPA may do that.[2] *See Engine Mfrs. Ass'n*, 88 F.3d at 1079; § 7543(a). With that exception, the Act "preserves the right of states 'otherwise to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles.'" *Engine Mfrs. Ass'n*, 88 F.3d at 1093 (quoting § 7543(d)).

## II

### A. Discovery of "defeat devices" & ensuing litigation

In May 2014, researchers at West Virginia University published a study showing that two of Volkswagen's 2.0-liter "light diesel" models emitted significantly higher quantities of pollutants during normal road operation than during emissions testing.[3] Following publication of the study, Volkswagen represented to the EPA and to the California Air Resources Board (CARB) that the identified discrepancies were caused by "technical issues and unexpected in-use [driving] conditions." Testing by the EPA and CARB demonstrated that Volkswagen's explanations did not account

---

[2] Except for California, or states that adopt emissions standards identical to California's. *See* § 7543(b)(1); *Engine Mfrs. Ass'n*, 88 F.3d at 1079–80.

[3] The study referred to the models as "Vehicle A" and "Vehicle B." The EPA and CARB identified them as the 2012 Jetta and 2013 Passat. W. Va. Univ. Ctr. for Alt. Fuels, Engines & Emissions, *In-Use Emissions Testing of Light-Duty Vehicles in the U.S.* 9 (2014), https://www.theicct.org/sites/default/files/publications/WVU_LDDV_in-use_ICCT_Report_Final_may2014.pdf.

for the disparate emissions levels. Unsatisfied, the two agencies threatened to withhold certificates of conformity for Volkswagen's 2016 model year light diesel cars, without which the company could not sell the cars in the United States.

Under that pressure Volkswagen confessed: its 2.0-liter light diesel models released between 2009 and 2015 contained a "defeat device." The device was designed so that when it sensed—and only when it sensed—the precise driving conditions of an emissions compliance test, software in the car altered engine performance so the vehicle emitted permissible levels of nitrogen oxide (NOx). Nitrogen oxide reacts with other compounds in the atmosphere to form ozone and smog. When the cars equipped with a defeat device operated under normal "in-use" road conditions, they emitted between 10 and 40 times the EPA-compliant level of NOx.

On September 18, 2015, the EPA sent a "Notice of Violation" (NOV) to Volkswagen stating that VW's installation of the defeat device on certain 2.0-liter VW diesel automobiles (the "affected vehicles") violated the Clean Air Act. Soon after, the EPA issued a press release, which contained the following message for vehicle owners:

> Car owners should know that although these vehicles have emissions exceeding standards, these violations do not present a safety hazard *and the cars remain legal to drive and resell.* Owners of cars of these models and years do not need to take any action at this time.

(emphasis added).

The VW defeat device scheme became front page news across the country. By December 2015, hundreds of private lawsuits against Volkswagen, most of them class actions, were filed in or removed to federal court. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 148 F. Supp. 3d 1367, 1368 (J.P.M.L. 2015). The Judicial Panel on Multidistrict Litigation (JPML) transferred all pending defeat device-related cases to Judge Charles Breyer in the Northern District of California (district court or MDL court) for "coordinated or consolidated pretrial proceedings." *Id.* at 1370.

The government soon joined in. On January 4, 2016, the United States filed a civil enforcement action against VW, under Section 203 of the Clean Air Act, 42 U.S.C. § 7522, in the Eastern District of Michigan. The complaint alleged four violations of the Clean Air Act:

1. **Certificates of conformity (COCs).** VW imported and sold cars not covered by a certificate of conformity, because the vehicles equipped with defeat devices did not "conform in all material respects" to the specifications described in the applications for those vehicles' certificates of conformity, in violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1). Complaint at 8–9, 20–21, *United States v. Volkswagen AG*, No. 1:16-cv-10006 (E.D. Mich. Jan. 4, 2016) [hereinafter Gov't Compl.].

2. **Defeat devices.** VW manufactured and sold vehicles equipped with a "defeat device," in violation of Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B). Gov't Compl. at 9–10, 21–22; *see*

*also* 40 C.F.R. § 86.1803-01 (defining "defeat device").

3. **Tampering.** VW's defeat device was an "auxiliary emission control device" (AECD) that "ha[d] the effect of removing or rendering inoperative devices or elements of design" of its vehicles, in violation of Section 203(a)(3)(A) of the Act, 42 U.S.C. § 7522(a)(3)(A). Gov't Compl. at 9–11, 23–24.

4. **Reporting.** VW violated its reporting obligations under the Act by not disclosing the AECD/defeat device in its applications for COCs, in violation of Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2). Gov't Compl. at 11–12, 24–25.

The complaint covered both 2.0-liter and 3.0-liter diesel vehicles. The government sought (1) injunctive relief prohibiting VW from continuing to engage in the conduct alleged; (2) an order mandating appropriate steps by VW, including mitigation of NOx emissions, to remedy the violations of the Act; and (3) civil penalties for each violation of the Act. The JPML transferred the enforcement action to the MDL court on January 15, 2016.

## B. The settlement process

Shortly after the government filed suit, the district court appointed Robert S. Mueller III as Settlement Master to "to facilitate settlement discussions among all parties to this multi-district litigation as soon as is feasible." The court selected lead counsel and a 22-member Plaintiffs' Steering Committee (PSC) to manage consolidated pre-trial litigation for the class. A "government coordinating counsel" was

appointed to represent the government's interests during pre-trial proceedings and settlement talks.[4]

The parties to the various cases reached an agreement in principle concerning the 2.0-liter vehicles. On June 28, 2016, the United States filed a proposed consent decree for this civil enforcement action, and the PSC filed a settlement agreement for preliminary approval in the class action. The consent decree established a program by which VW would buy back, permit the termination of leases of, or perform modifications on the emissions systems of all affected vehicles.[5] VW would also pay $2.7 billion into a "mitigation trust" to offset the increased NOx emissions caused by the affected vehicles, and pay another $2 billion to support public awareness of zero-emissions vehicles. For the buyback-lease termination-modification program, the consent decree set a participation target of 85% of the affected vehicles; for each percentage point below 85%, VW had to pay additional funds into the mitigation trust. The terms of the class action settlement largely overlapped with the terms of the consent decree between VW and the government and also with a separate consent order filed by the Federal Trade Commission. Pursuant to 28 C.F.R. § 50.7(b), notice of the partial consent decree appeared in the Federal Register on July 6, 2016, and

---

[4] In addition to the United States, the Federal Trade Commission (FTC), represented by separate counsel, brought claims against VW for violations of the FTC Act, 15 U.S.C. §§ 45, 53, and California sued VW for violations of state and federal law. The FTC and California actions were consolidated into the MDL proceeding. Throughout the opinion, "the government" refers to the United States unless otherwise noted.

[5] The consent decree, class action settlement, and FTC consent order covered 2.0-liter diesel vehicles. A separate settlement was reached with respect to 3.0-liter diesel vehicles.

a 30-day public comment period ensued. *See* Notice of Lodging of Proposed Partial Consent Decree Under the Clean Air Act, 81 Fed. Reg. 44,051 (July 6, 2016).

## C. Fleshman's attempt to intervene

While settlement talks were well underway in the cases proceeding in California, Fleshman filed suit against VW in the Circuit Court of Campbell County, Virginia.[6] At the time Fleshman filed suit, he owned a 2012 model year light diesel Jetta.

Later, when the settlement talks were close to fruition, Fleshman moved to intervene in the class action, "to object to the proposed Consumer Class Action Settlement Agreement and Release." The district court refused to allow the intervention.

Undeterred, Fleshman moved a week later to intervene in the government's enforcement action. He argued that the consent decree "violate[d] Federal and Virginia law" because it did not require rescission of sale for all affected vehicles; instead, it permitted vehicle owners and lessees to keep their unmodified vehicles if they wished. Fleshman also alleged that Virginia's SIP prohibited the owners of affected vehicles from driving them, so the buyback should have been mandatory.

The specific SIP provision Fleshman relied upon reads in full: "No motor vehicle or engine shall be operated with the

---

[6] *See Fleshman v. Volkswagen Grp. of Am., Inc.*, No. 6:16-cv-00021-GEC (W.D. Va. May 2, 2016), ECF No. 1-1. The case was removed to federal court and then remanded back to state court. *See id.*, ECF No. 17.

motor vehicle pollution control system or device removed or otherwise rendered inoperable." 9 Va. Admin. Code § 5-40-5670(A)(3).  Under Fleshman's reading, this SIP provision prohibited vehicle owners from driving unmodified affected vehicles.  Fleshman maintained in his intervention motion that the EPA's statement of September 18, 2015, advising that "the [affected] cars remain[ed] legal to drive and resell" was inconsistent with the Virginia SIP.  Fleshman sought intervention to "protect his interest as a Virginian[] in enforcing the laws of Virginia . . . incorporated into the Clean Air Act by way of Virginia's [SIP]."[7]  He argued that the Clean Air Act's citizen-suit provision provided him with a statutory right to intervene, presumably pursuant to Federal Rule of Civil Procedure 24(a)(1).[8]  Fleshman further contended that he had a protectable interest in the enforcement of Virginia's SIP not adequately protected by the parties to the litigation, presumably invoking Rule 24(a)(2).

The government observed in its opposition papers that Fleshman had not appended a complaint to his motion to intervene. In response, Fleshman attached one to his reply brief, and shortly thereafter he filed a First Amended

_____

[7] *See Cal. Dump Truck Owners Ass'n v. Nichols*, 784 F.3d 500, 503 (9th Cir. 2015) ("Once approved by the EPA, a SIP becomes federal law and must be carried out by the state.").  Fleshman alleged that the consent decree also violated the SIPs of more than a dozen other states and the District of Columbia.

[8] Rule 24(a) provides: "On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a).

Proposed Complaint-in-Intervention.[9]     The complaint consisted largely of allegations that the EPA was not adequately prosecuting the action against VW.[10] In his prayer for relief, Fleshman sought various declarations and orders against the EPA (*e.g.*, "[f]ind and order that the EPA cannot propose and support a monetary penalty which is an incentive to violate the Clean Air Act"); none of the requested relief was directed at Volkswagen.[11]

The district court denied Fleshman's motion to intervene in this civil enforcement action. The court held that the Clean Air Act's citizen-suit provision permits intervention of right only when the intervenor seeks to enforce the same "standard, limitation, or order" as the government does in its action. Because Fleshman sought to enforce Virginia's SIP—not the same "standard, limitation, or order" as the Clean Air Act provisions underlying the government's complaint—the Act did not permit him to intervene as a matter of right.

---

[9] For simplicity, we refer to Fleshman's First Amended Proposed Complaint-in-Intervention as "the complaint" or "Fleshman Compl." except when necessary to distinguish it from the first proposed complaint-in-intervention.

[10] The two main sections of the complaint are titled "The Administrator and the EPA Have Not Diligently Prosecuted the Clean Air Act" and "The Specific Failures of the Administrator to Enforce the Clean Air Act."

[11] Fleshman did not bring his suit as a class action.

Shortly thereafter, the district court entered the proposed consent decree in the government enforcement action.**[12]** Fleshman appeals the denial of his motion to intervene.

### III

Under Rule 24, a stranger to a lawsuit may intervene "of right" where (1) a federal statute gives the would-be intervenor an "unconditional right" to intervene in the suit, or (2) letting the lawsuit proceed without that person could imperil some cognizable interest of his. Fed. R. Civ. P. 24(a). "Rule 24(a) is construed broadly, in favor of the applicants for intervention." *Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924, 926 (9th Cir. 1990). Fleshman argues that both subsections of Rule 24(a) entitle him to intervene. We address each subsection in turn.

### A.  Intervention under Rule 24(a)(1)

Fleshman first argues that he may intervene in the government's action by grace of the Clean Air Act's citizen-suit provision, § 7604. The issue is whether that provision grants him an "unconditional right" to intervene. Fed. R. Civ. P. 24(a)(1). It does not.

#### i.   Scope of intervention under the Clean Air Act

The Clean Air Act entitles any person to sue for a violation of "an emission standard or limitation under this chapter" or "an order issued by the Administrator or a State

---

**[12]** The district court approved the class action settlement on the same day. The district court's denial of Fleshman's objections to the class action settlement are the subject of a separate appeal.

with respect to such a standard or limitation." § 7604(a)(1).
A citizen's right to sue under the Act has limitations,
however:

> No action may be commenced—
>
> (1) under subsection (a)(1) of this section—
>
>> (A) prior to 60 days after the plaintiff has
>> given notice of the violation (i) to the
>> Administrator, (ii) to the State in which
>> the violation occurs, and (iii) to any
>> alleged violator of the standard, limitation,
>> or order, or
>>
>> (B) if the Administrator or State has
>> commenced and is diligently prosecuting
>> a civil action in a court of the United
>> States or a State to require compliance
>> with the standard, limitation, or order, but
>> in any such action in a court of the United
>> States any person may intervene as a
>> matter of right.

§ 7604(b)(1). This tripartite structure for citizen suits—a
right of action, qualified by a notice requirement and a
"diligent prosecution" bar, which in turn is leavened by a
right to intervene—is replicated in a host of other federal

environmental statutes.[13] *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 977–78 (2d Cir. 1984).

Our threshold question in deciding whether Fleshman had a right to intervene in this action is whether a citizen who is not barred from bringing his own citizen suit by a diligently prosecuted government enforcement action may nonetheless intervene in that government action. After examining the parameters of § 7604(b)(1)(B)'s diligent prosecution bar, we hold that it circumscribes a citizen's right to intervene in an enforcement action under that same provision. That is, a citizen who retains the right to file suit on his own, despite a government enforcement action, has no statutory right to intervene in that action.[14]

Section 7604(b)'s two subparts work together to delimit citizen suits against alleged violators of the Act. First, before filing suit, a plaintiff must give sixty days' notice to the EPA, the relevant State, and the alleged violator. § 7604(b)(1)(A). Second, no citizen suit may be commenced if the EPA or a

---

[13] *See* Clean Water Act, 33 U.S.C. § 1365(a)–(b); Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)–(b); Safe Drinking Water Act, 42 U.S.C. § 300j-8(a)–(b); Surface Mining Control and Reclamation Act, 30 U.S.C. § 1270(a)–(b); *cf.* Endangered Species Act, 16 U.S.C. § 1540(g)(2)(A)(iii) (stating a diligent prosecution bar, but without a corresponding right to intervene).

[14] This circuit has not yet considered the contours of the Act's intervention provision. *United States v. Stone Container Corp.*, 196 F.3d 1066, 1069 (9th Cir. 1999), held that § 7604(d) of the Act did not entitle the citizen plaintiffs, who had intervened in a government enforcement action under § 7604(b)(1)(B), to attorneys' fees, because such an action was not "brought pursuant to subsection (a) [the citizen-suit provision] of this section." § 7604(d). We did not discuss, however, the scope of the right to intervene under § 7604(b)(1)(B).

state is already diligently litigating an action "to require compliance with the standard, limitation, or order." § 7604(b)(1)(B). "The time between notice and filing of the action should give the administrative enforcement office an opportunity to act on the alleged violation." S. Rep. No. 91-1196, at 37 (1970) (report of the Senate Committee on Public Works). "If the Administrator or the State commences enforcement action within that 60-day period, the citizen suit is barred, presumably because governmental action has rendered it unnecessary." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59 (1987) (discussing the citizen-suit and intervention provisions of the Clean Water Act). Taken as a whole, the statutory architecture indicates that "the citizen suit is meant to supplement rather than to supplant governmental action." *Id.* at 60.

But not every citizen suit is verboten once the government files suit. The diligent prosecution bar prevents a citizen from suing under § 7604(a)(1) if the government is prosecuting an action "to require compliance with *the* standard, limitation, or order." § 7604(b)(1)(B) (emphasis added). "[*T*]*he* standard, limitation, or order" in (b)(1)(B) refers back to the "emission standard or limitation" or "order issued . . . with respect to such a standard or limitation" described in the citizen-suit provision, § 7604(a)(1), the violation of which any person may sue to enjoin, "[e]xcept as provided in subsection (b)." *Id.* The explicit textual cross-references between subsections (a) and (b), and the use of the definite article ("*the* standard, limitation, or order"),[15] signify

---

[15] "[T]he definite article 'the' particularizes the subject spoken of, suggesting that Congress meant to refer to a single object . . . ." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1074 (9th

with precision that the diligent prosecution bar forecloses only citizen suits that seek to enforce the *same* "standard, limitation, or order" as the government enforcement action. *See Hooker Chems.*, 749 F.2d at 978.[16]  A person suing to enforce a *different* "standard, limitation, or order" with regard to certain emissions from that invoked by the government in its enforcement action is not barred from doing so by § 7604(b).

The diligent prosecution bar in turn defines the right of intervention granted by § 7604(b)(1)(B).  No citizen suit for a violation of a "standard, limitation, or order" may be commenced in the face of an enforcement action "to require compliance with the [same] standard, limitation, or order, *but in any *such* action . . . any person may intervene as a matter of right." *Id.* (emphasis added).  Once again, the text and context are plain: a person may "intervene as a matter of right" in an enforcement action—"*such* action"—only if that action has barred the person from bringing his own citizen suit under § 7604(a)(1).  The word "such" restricts the actions in which a person may intervene to those mentioned in the preceding clause—that is, diligently prosecuted enforcement actions that bar a citizen suit under subsection (a)(1).  The connective "but" sets the grant of intervention in opposition

---

Cir. 2016) (internal quotation marks omitted) (quoting *The*, *Black's Law Dictionary* (4th ed. 1968)).

[16] In the past, we have described the bar in broad terms as "expressly preclud[ing] commencement of suits . . . when the United States has already commenced and is diligently prosecuting an action asserting the same *claims*." *Stone Container Corp.*, 196 F.3d at 1068 (emphasis added).  Because the statute speaks of a "standard, limitation, or order" rather than a "claim," we avoid importing the latter term into our more specific analysis.

to the diligent prosecution bar: you can't bring your own suit, but you're allowed to intervene in this one.  Lastly, "[t]he right to intervene is conferred in the same sentence that limits the rights of citizens who would otherwise bring private enforcement actions, which suggests that Congress intended to confer that right only on those particular citizens." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 837–38 (8th Cir. 2009) (construing the scope of the Clean Water Act's analogous right of intervention).

The phrase "any person" in the intervention clause might appear to broaden the grant of intervention beyond simply those "citizens who would otherwise bring private enforcement actions," but are precluded from doing so by the government's action.  *Id.*  "[U]se of the word 'any' will sometimes indicate that Congress intended particular statutory text to sweep broadly."  *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 629 (2018).  But whether "any" has that import in a particular statute "necessarily depends on the statutory context."  *Id.*  Here, that context—and the other words of the provision—cabin "any person" to those whose suits were barred by the diligent prosecution bar.

*Stone Container Corp.* demonstrates how § 7604's pieces fit together.  196 F.3d at 1067.  In that case, the United States filed suit against the defendant for violations of the Clean Air Act, after receiving notice under § 7604(b)(1)(A) of the private plaintiff's intent to sue.  *Id.*  The private plaintiff then filed its own 21-count suit against the defendant.  Three of the 21 counts "mirrored" counts in the government's complaint.  Those "duplicative" counts were dismissed by the plaintiff "subject to intervention in the United States enforcement action."  *Id.*  The plaintiff then negotiated a separate consent

decree for the remaining, non-duplicative—and non-barred—claims in its complaint. *See id.* at 1067–68.

Every circuit to consider the Clean Air Act's right of intervention—or the identically worded provisions in other environmental statutes, *see supra* note 13—has reached the same result we do. For example, the Second Circuit held, as do we, that "[i]ntervention is limited to government initiated actions that could have been brought by the individual but for the government action." *Hooker Chems.*, 749 F.2d at 978.[17] Similarly, the Third Circuit recognized that "[s]ection 7604(b) . . . does not establish a right to intervene independent from the other provisions in § 7604." *Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 972–73 (3d Cir. 1982).

In short, a party may intervene as a matter of right in a Clean Air Act enforcement action only if he is barred under the Act by that enforcement action from maintaining his own suit to remedy a violation of the "standard, limitation, or order" at issue.

---

[17] *See also Metro. St. Louis Sewer Dist.*, 569 F.3d at 838 (holding that under the Clean Water Act, "only a citizen whose suit has been displaced by the government action is entitled to intervene"); *United States v. City of New York*, 198 F.3d 360, 364 (2d Cir. 1999) (holding that the Safe Drinking Water Act "authorizes intervention as of right by private parties in suits that could have been brought by the parties but for the fact that they are being pursued by the United States or a state").

>    *ii. The government was not suing to enforce a "standard, limitation, or order" within the meaning of the Act*

Our next question, then, is whether Fleshman aimed to enjoin violations of one of the "standard[s], limitation[s], or order[s]" underlying the government's enforcement action against Volkswagen. If so, the diligent prosecution bar precluded his action and he was entitled to intervene "as a matter of right" in the enforcement action under § 7604(b)(1)(B) and Rule 24(a)(1). If not, then he had no statutory right to intervene in the government's case.

The government brought suit to enjoin four distinct violations of Section 203 of the Clean Air Act, 42 U.S.C. § 7522. It alleged that VW violated the Act by selling vehicles not covered by certificates of conformity, equipping those vehicles with unlawful "defeat devices" and auxiliary emission control devices, and failing to report those devices in its COC applications.[18] *See supra* pages 9–10. For relief,

---

[18] Section 7522(a) provides: "The following acts and the causing thereof are prohibited—

>    (1) in the case of a manufacturer of new motor vehicles or new motor vehicle engines for distribution in commerce, the sale, or the offering for sale, or the introduction, or delivery for introduction, into commerce, or (in the case of any person, except as provided by regulation of the Administrator), the importation into the United States, of any new motor vehicle or new motor vehicle engine, manufactured after the effective date of regulations under this part which are applicable to such vehicle or engine unless such vehicle or engine is covered by a certificate of conformity . . . .

the government sought an injunction, mitigation of excess NOx emissions, and civil penalties.

The prohibitions contained in § 7522 do not appear to be "emission standard[s] or limitation[s]" or "orders issued . . . with respect to" such standards or limitations within the meaning of § 7604(a)(1). Section 7604(f) explains that the term "emission standard or limitation," for purposes of the citizen-suit provision, covers several broad categories of regulatory requirements, including—somewhat unhelpfully—"emission standard[s]" and "emission

(2)(A) for any person to fail or refuse to permit access to or copying of records or to fail to make reports or provide information required under section 7542 of this title; . . .

(3)(A) for any person to remove or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter prior to its sale and delivery to the ultimate purchaser, or for any person knowingly to remove or render inoperative any such device or element of design after such sale and delivery to the ultimate purchaser; or

(B) for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter . . . ."

limitation[s]."[19]   Section 7602, which defines terms used throughout the Clean Air Act, more concretely defines "emission limitation" and "emission standard" to mean "a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction, and any design, equipment, work practice or operational standard promulgated under this chapter."   § 7602(k).   Neither the § 7602(k) definition nor the § 7604(f) list of categories of "emission standard[s]" and "emission limitation[s]" encompasses the generic statutory prohibitions in § 7522.

For an example of an "emission standard," consider 40 C.F.R. § 86.1811-04.   That regulation establishes permissible emission levels of nitrogen oxide (NOx) for "light-duty vehicles" like the vehicles at issue in this case. *See id.* § 81.1811-04(c) ("Exhaust emissions from Tier 2 vehicles must not exceed the standards in Table S04–1 of this section at full useful life . . . .").   Unlike the statutory prohibitions in § 7522, which were enacted by Congress, the regulation is "a requirement established by . . . the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis." § 7602(k).

---

[19] Examples of an "emission standard or limitation" include "a schedule or timetable of compliance, emission limitation, standard of performance or emission standard," "a control or prohibition respecting a motor vehicle fuel or fuel additive," requirements or conditions of permits relating to other non-motor-vehicle related portions of the Clean Air Act, and—relevant later—regulatory requirements promulgated "under any applicable State implementation plan approved by the [EPA]." § 7604(f).

The United States did not sue VW for violations of 40 C.F.R. § 86.1811-04—that is, of an "emission standard or limitation" as encompassed by § 7604(a)(1)—nor for violations of any other standard or limitation promulgated under § 7521.[20]  Instead, the United States sued VW for violations of statutory provisions that are not, and do not incorporate, "standard[s], limitation[s], or order[s]" within the meaning of § 7604(a)(1).  The diligent prosecution bar applies only when the government is enforcing a "standard or limitation under this chapter" or an "order . . . with respect to such a standard or limitation."  § 7604(a)(1).  Fleshman's claims were thus not precluded by that bar, and he was free to bring his own citizen suit alleging them.  And because a citizen has a statutory right to intervene in a government enforcement action under the Clean Air Act only if precluded by the diligent prosecution bar from bringing his own suit, Fleshman had no right to intervene here.

### iii.  Fleshman sought to enforce the Virginia SIP, not the requirements of § 7522

There is an alternative reason Fleshman had no statutory right to intervene in this action.  Even if § 7522's statutory prohibitions were "standard[s], limitation[s], or order[s]" that would foreclose, through § 7604(b)(1)(B), a citizen suit, this government enforcement action would not bar Fleshman from litigating the claims in his proposed suit.  Properly viewed,

---

[20] Section 7521 directs the EPA administrator to prescribe by regulation "standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare."

Fleshman's claims are not predicated on any § 7522 violations.

Fleshman's first proposed complaint-in-intervention focused entirely on the EPA's inadequate enforcement of state SIPs. He sought declaratory relief to remedy the inadequacy and unlawfulness of the consent decree flowing from its inattention to state SIPs. In particular, Fleshman's first complaint—which does not refer to § 7522 at all—alleged a violation of a provision of Virginia's SIP that prohibits the operation of cars whose "pollution control system[s] or device[s]" had been "removed or otherwise rendered inoperable." 9 Va. Admin. Code § 5-40-5670(A)(3).

The government's enforcement action did not allege that VW had not complied with Virginia's (or any state's) SIP, or seek relief connected with SIP compliance. That, indeed, was Fleshman's central gripe in his original intervention complaint. Because Fleshman's original complaint alleged violations entirely distinct from those the government identified, Fleshman could have proceeded with his own citizen suit. § 7604(b)(1)(B); *see also* § 7604(f)(4) (private plaintiffs may sue to enforce a "standard, limitation, or scheduled established under . . . any applicable State implementation plan approved by the [EPA]"). He therefore had no statutory right to intervene in the government's action based on his original complaint-in-intervention.

In his amended proposed complaint-in-intervention, Fleshman emphasized somewhat different purported violations—namely, the EPA's failure to demand that all of Volkswagen's non-conforming cars be removed from the road, all sales be rescinded, and all purchase prices be

refunded, relief that he argues was mandated by the Clean Air Act. Fleshman Compl. at 11. Like the earlier complaint, however, the second one did not identify any of the subsections of § 7522 as the source of the violations alleged or the relief sought.[21] In fact, Fleshman's proposed amended complaint-in-intervention does not actually set forth *any* claims or causes of action; it contains many paragraphs of allegations followed by a request for relief.[22] If anything, Fleshman's refrain that the EPA failed to enforce the "mandatory, non-discretionary" requirements of the Clean Air Act, Fleshman Compl. at 2–8, indicates that his claims are, in reality, claims *against* the EPA under a different provision of the Act from § 7522. *See* § 7604(a)(2) ("[A]ny person may commence a civil action on his own behalf . . . against the Administrator [of the EPA] where there is alleged a failure of the Administrator to perform any act or duty under this chapter *which is not discretionary* . . . ." (emphasis added)).

---

[21] Fleshman's complaint does allude to violations of § 7522. *See* Fleshman Compl. at 2 ¶¶ 4–6, 6 ¶ 15A, 8 ¶ 15C–D, 11. But the references to § 7522 are intermingled with allegations that VW's conduct, and the consent decree itself, also violated §§ 7410, 7413, 7522(a)(4)(D), 7523, and 7541—provisions of the Act that did not underpin the government's enforcement action against VW. What is clear is that Fleshman's complaint is not founded upon violations of § 7522, notwithstanding that he mentions the section at various points in his complaint.

[22] Fleshman's blanket attempt to incorporate by reference all of the allegations in the government's complaint does not transform his suit into one alleging violations of the same "standard, limitation, or order" as the government. *See* Fleshman Compl. at 1 ¶1. The complaint incorporates the government's allegations, not its claims or causes of action. Mirroring the allegations in the government's complaint does not change the basic thrust of Fleshman's complaint.

In sum, the government's enforcement action did not bar Fleshman's suit under the diligent prosecution bar, § 7604(b)(1)(B). The statutory provisions the United States sued to enforce—§ 7522—are not "standard[s], limitation[s], or order[s]" that would preclude a citizen suit under § 7604(a)(1). Even if they were, Fleshman's proposed complaints-in-intervention demonstrate that he was not seeking to enforce the provisions of § 7522 invoked by the government. For both reasons, Fleshman could have filed his own suit against Volkswagen or the EPA to enforce Virginia's SIP. Ergo, he was not entitled to intervene in the government's action. *See* § 7604(b)(1)(B). And because the Clean Air Act did not grant Fleshman an "unconditional right to intervene," he was not entitled to do so under Rule 24(a)(1).

### B. Intervention under Rule 24(a)(2)

Fleshman argues—albeit indistinctly—that he is entitled to intervene of right under Rule 24(a)(2) to protect his interest in the proper enforcement of the Clean Air Act and Virginia's SIP. Fleshman, however, lacks standing for the relief in his complaint-in-intervention that goes beyond what the United States sought in its suit, and so may not intervene of right. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017).[23]

---

[23] Under Rule 24(a)(2), a court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." We assume, because no party has argued otherwise, that Fleshman could meet the "impairment" prong under 24(a)(2). But it is not at all clear that he could. Fleshman's ability under § 7604(a)(1) to maintain a separate

"[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Id.* The relief Fleshman seeks is completely different from that sought by the government in its action.

The United States asked the court permanently to enjoin Volkswagen's violations of § 7522, order Volkswagen to mitigate the excess NOx emissions from its vehicles, and assess civil penalties against Volkswagen for each violation of the Act. By contrast, Fleshman asked the court to:

> (1) declare that enforcement of § 7522 requires the rescission of the sale of each of the hundreds of thousands of affected vehicles;
>
> (2) declare that the EPA had no authority to "annul or repeal" the SIPs of various states, or to "impair or impede" the enforcement of SIPs, by "promoting and endorsing" an allegedly deficient and unlawful consent decree;

---

lawsuit against Volkswagen, or the EPA, to enforce the Clean Air Act would seem to defeat any argument that adjudication of the government's enforcement action without his participation will impair his interests. *See United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002) (considering it "doubtful" that the proposed intervenors' interests would be impaired where "[t]he litigation d[id] not prevent any individual from initiating suit" to enjoin the defendants' unlawful conduct). In practice, the denial of intervention under § 7604(b)(1)(B) and Rule 24(a)(1) might effectively preclude would-be intervenors from arguing they are alternatively entitled to intervene under Rule 24(a)(2).

> (3) declare that §§ 7413 and 7541 require the EPA to notify *other* owners and lessees that it is illegal to operate their vehicles in the United States, and to notify the States of "widespread" violations of various provisions of the Clean Air Act and numerous SIPs;

> (4) and declare that the EPA could not "support a monetary penalty which is an incentive to violate the Clean Air Act."[24]

In short, Fleshman desires a series of declarations that the Clean Air Act requires the United States to seek a full-rescission remedy, and, conversely, prohibits it from pursuing anything short of that in a settlement with VW. For him, only the removal of all affected cars from the road will ensure that neither he nor the "many thousands of innocent owners and lessees," Fleshman Compl. at 6 ¶ 14, will later face liability for driving their allegedly SIP- and Clean Air Act-noncompliant cars.

But Fleshman lacks standing for such sweeping relief. "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted." *Or. Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) (citation omitted). For Fleshman to have standing for

---

[24] Although Fleshman's prayer for relief asks the court to "[f]ind and order" the relief listed above, which suggests affirmative injunctive relief, each item of specified relief seeks only a declaration that the Clean Air Act requires the EPA to do specific things, and prohibits it from doing others.

these claims for relief, he must show that the threatened harm to him—caused by the government's failure to enforce the Clean Air Act appropriately—is "certainly impending" or that "there is a substantial risk that the harm will occur," *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotation marks and citations omitted), and that only rescission of the sale of *every* affected vehicle will remedy that harm.

Assuming that Fleshman is correct that the letter of the Virginia SIP would prohibit him from driving an unmodified vehicle in the future, he has myriad ways to avoid potential liability under the SIP. *He* is aware of that risk, notwithstanding the theoretical ignorance of other owners or lessees. And he could participate in the class action settlement, by choosing to have Volkswagen either buy back his car or perform an approved emissions modification on it.[25]

Moreover, Fleshman's arguments that the EPA or any state would enforce a SIP against him for continuing to drive his car are entirely speculative. There are no plausible allegations, nor reason to believe from the record, that the EPA or any state will attempt to subject operators of unmodified Volkswagen vehicles to liability. The available evidence indicates the opposite—that "the threat of enforcement" is "chimerical," rather than "credib[le]" and

---

[25] Fleshman has until September 1, 2018, to file a claim for benefits under the settlement. *See Volkswagen/Audi/Porsche Diesel Emissions Settlement Program*, Volkswagen, https://www.vwcourtsettlement.com/ (last visited June 2, 2018). After briefing was completed in this appeal, the EPA and CARB approved an emissions modification program for "Generation 1" vehicles, including Fleshman's 2012 Jetta.

"substantial."[26]  *Susan B. Anthony List*, 134 S. Ct. at 2342, 2345 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).  Fleshman's fears of enforcement thus "rest on mere conjecture about possible governmental actions." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013) (holding that putative injuries depending on the plaintiffs' surmise about government surveillance activities did not give rise to standing); *cf. Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010) ("[C]laims of future harm lack credibility when . . . the enforcing authority has disavowed the applicability of the challenged law to the plaintiffs.").

Further, and critically, Fleshman's potential future liability for driving his *own* car does not entitle him to seek, as he does, rescission of all the sales of the affected cars, including those belonging to hundreds of thousands of other people.  His own awareness of the theoretical future enforcement problem, and the severe disjuncture between the injuries to himself he asserts and the relief he seeks, underscore that he is, primarily, asserting potential harms to third parties. *See* Fleshman Compl. at 5 ¶ 14 ("[After the settlement,] the owners and lessees [of the affected vehicles] will learn for the first time their vehicles are illegal to use, but

---

[26] *See Frequent Questions about Volkswagen Violations*, U.S. Envtl. Protection Agency, https://www.epa.gov/vw/frequent-questions-about-volkswagen-violations (last visited June 2, 2018) ("Will EPA take or confiscate my vehicle?  Absolutely not. EPA will not confiscate your vehicle or require you to stop driving."); Press Release, Va. Office of the Attorney Gen., *Herring Announces Compensation for Virginia Consumers Under Settlements with Volkswagen over Emissions Fraud* (June 28, 2016), http://ag.virginia.gov/media-center/news-releases/773-june-28-2016-herring-announces-compensation-for-virginia-consumers-under-settlements-withvolkswagen-over-emissions-fraud (praising the settlements and their value to Virginians).

will have already released all claims against the defendants responsible for the illegality.").**[27]**  Absent some exception not here applicable, Fleshman "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests" of other owners or lessees. *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1118 (9th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *see also Mills v. United States*, 742 F.3d 400, 407 (9th Cir. 2014) (describing when third-party standing is permitted).

In short, Fleshman has no standing for the relief he seeks that the government does not, and so may not intervene as of right under Rule 24(a)(2). *See Town of Chester*, 137 S. Ct. at 1651.

## IV

The Clean Air Act did not grant Fleshman an "unconditional right" to intervene in the government's suit. Fed. R. Civ. P. 24(a)(1).  The United States was not seeking to enforce any "standard, limitation, or order" as those terms are used in the Clean Air Act, and in any event, Fleshman is seeking to enforce different purported requirements of the Act.  As the government's action therefore did not bar Fleshman from suing on his own, he is not entitled to intervene.  § 7604(b)(1)(B).  Rule 24(a)(2) is no help to Fleshman, because he lacks standing to pursue the relief in

---

**[27]** *See also* Fleshman Compl. at 6 ¶ 14 (alleging that the EPA's statements that the affected vehicles were legal to drive "set a trap for many thousands of innocent owners and lessees"); *id.* at 10 (requesting that the court order the EPA to "notify each owner and lessee of a Dirty Diesel vehicle that it is illegal to use their vehicles in the United States").

his complaint.  Accordingly, the district court's judgment is
**AFFIRMED.**